IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GIRARD ESTATE AREA RESIDENTS, et al.,** | : | **CIVIL ACTION** |
| Plaintiffs | : | |
| | : | |
| vs. | : | NO. 08-2456 |
| | : | |
| **DEFENSE REALTY, LLC, et al.,** | : | |
| Defendant | : | |

## MEMORANDUM

**STENGEL, J.**                                                                 September 30, 2009

Plaintiffs Girard Estate Area Residents and Broad Street West Civic Association ("Civic Associations") filed this action for declaratory and injunctive relief. Defendants the United States of America and Defense Realty, LLC ("Defense Realty") filed motions for summary judgment on February 2, 2009 and February 4, 2009, respectively.[1] For the reasons set forth below, their motions will be granted.

---

[1] Defense Realty's motion joined the motion and memorandum filed by the United States.

The Civic Associations filed an initial response on March 17, 2009, titled "Plaintiffs Girard Estate Area Residents and Broad Street West Civic Associations's Joint Answers to the Motions of the United States and Defense Realty, LLC for Summary Judgment, and Plaintiffs' Cross Motion for Summary Judgment," see Docket at 29, Girard Estate Area Residents, et al. v. Defense Realty, LLC, et al, No. 08-2546 (E.D. Pa. filed March 17, 2009), and a reformatted response on March 31, 2009, see Docket at 38, Girard Estate Area Residents, et al. v. Defense Realty, LLC, et al, No. 08-2546 (E.D. Pa. filed March 31, 2009) [hereinafter "Plaintiffs' March 31, 2009 Memorandum"].

**I.     BACKGROUND**

This is an action for declaratory and injunctive relief and for a decree of specific performance to enforce a written agreement between the parties and a declaration of deed restrictions.  The Civic Associations are located in South Philadelphia and organized for the purpose of preserving the quality of life in, and character of, their neighborhoods. Plaintiff's March 31, 2009 Memorandum at Ex. 1, at ¶ 3.  This controversy involves a large section of land around 20th & Johnson Streets containing six buildings, which used to be the local headquarters of the Department of Defense.  See Plaintiff's March 31, 2009 Memorandum at Ex. P, at ¶ 60-61, 123; Ex. 1, at ¶ 96.

Defense Realty purchased the property, which was zoned "general industrial."  See Complaint at ¶ 3; Defense Realty's Answer at ¶ 3, 5.  Defense Realty wanted to use the property for commercial development, a use not permitted under the general industrial zoning classification. See Complaint at ¶ 6; Defense Realty's Answer at ¶ 5-6.  Defense Realty went before the Philadelphia City Council to request the re-zoning of the property to commercial classification.  Id.

Defense Realty sought the support of the Civic Associations.  See Plaintiff's March 31, 2009 Memorandum at Ex. 1, at ¶51.  Defense Realty and the Civic Associations entered into negotiations.  The Civic Associations informed Defense Realty they did not want the site used as another school because the elementary and high schools in the area caused noise and traffic congestion, and they were concerned about a school's impact on the community's quality of life.  See Plaintiff's March 31, 2009 Memorandum at Ex. 1, at ¶ 57-64; see, e.g., Plaintiffs' March 31, 2009 Memorandum at Ex. G, at 65-66.

Defense Realty spoke about their desire to work with the community and their hopes to establish a retail complex.  <u>Id.</u>, at Ex. 1, at ¶ 72-73; Plaintiffs' March 31, 2009 Memorandum at Ex. J, at 7-8, 9-10.  To get the support of the civic associations, Defense Realty entered into an agreement dated June 10, 2005, in which the plaintiffs agreed to support the re-zoning subject to certain conditions.  <u>See</u> Plaintiff's March 31, 2009 Memorandum at Ex. A.

The civic associations were concerned the property would be used in ways which would bring more problems into their neighborhoods.  Therefore, they attached a declaration of deed restrictions to the June 10, 2005 agreement.  <u>Id.</u>  This declaration placed restrictions on the use of the property which would have otherwise been permitted under commercial zoning.  For example, it prohibited elementary schools and high schools, fast food and take-out restaurants, counter service restaurants, buffet restaurants, and drive-in restaurants.  <u>See</u> Defendant's Memorandum at Ex. L, at 1.  Restaurants at the property are limited to restaurants with "dine-in table service" and "wait-staff."  <u>See</u> Defendant's Memorandum at Ex. L, at 2.  Residential use of the property was limited to single-owner occupancy use.  In consideration of this agreement and declaration, the plaintiffs supported the proposed change in zoning which was passed on June 16, 2005.  <u>See id.</u>  The declaration was recorded with the Commissioner of Records in Philadelphia on July 13, 2005.  <u>See</u> Plaintiffs' March 31, 2009 Memorandum at Ex. 1, at ¶ 82.

On October 22, 2007, Defense Realty entered into a twenty-year lease with the Department of Labor to use three floors of one of the sites' buildings as Philadelphia Job

Corps Center ("Job Corps").  See Plaintiffs' March 31, 2009 Memorandum at Ex. C, at ¶¶ 1, 2, 6.  Prior to executing the lease, Defense Realty did not consult or provide notice to the Civic Associations regarding its lease with the Department of Labor, or the intended use of the property.  See Plaintiffs' March 31, 2009 Memorandum at Ex. G.  Job Corps has classes for obtaining a General Educational Development ("GED") certificate, and classes to prepare enrollees for vocation, college, and entry into the armed forces.  See id., at ¶¶ 97-98.  Job Corps also has an institutional kitchen, where enrollees are trained in nutrition, meal planning, and food preparation for health care institutions.  Job Corps enrollees are provided with the prepared meals free of charge.  Faculty members may partake in the prepared meals for a nominal fee of $2.00.

      The Civil Associations filed a complaint in the Court of Common Pleas, which Defense Realty removed here.  They claimed Defense Realty breached the agreement by entering into a long-term lease with the U.S. Department of Labor to use one of the buildings on the property for Jobs Corps, which, they allege, is a high school, contains a restaurant, and has an impermissible residential use.  They demanded the defendant cease and desist.  On June 26, 2008, pursuant to a stipulation by the parties, the United States of America intervened as an additional defendant pursuant to Federal Rule of Civil Procedure 24(a).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is "genuine" when a reasonable jury could return a verdict for the non-moving party based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" when it could affect the outcome of the case under the governing law.  Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

5

Under Rule 56 of the Federal Rules of Civil Procedure, the court must view the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's version of events against the opponent, even if the quantity of the moving party's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**III.     DISCUSSION**

Defendants maintain the Civic Associations' complaint should be dismissed because the Civic Associations lack standing to bring the action and, in the alternative, the defendants are entitled to judgment as a matter of law. Regardless whether the Civic Associations have standing, their complaint will be dismissed because, as matter of law, the Defendants' use of the property is not prohibited by the deed restrictions.

B.     Contract Law

The Civic Associations contend the defendants are in violation of the deed restrictions prohibiting use of the property as a high school, and limiting the restaurant

and residential uses of the property.[2]   The defendants are entitled to judgment as a matter of law because Job Corps is not a high school or a restaurant prohibited by the deed restrictions, and does not involve an impermissible residential use.

In Pennsylvania, covenants limiting property use, "although not favored by the law, are legally enforceable," Fey v. Swich, 454 A.2d 551, 554 (Pa. Super. Ct.1982) (citing Rieck v. Virginia Manor Co., 380 A.2d 375, 377 (Pa. Super. Ct. 1977)), and may be enforced by granting injunctive relief, Perrige v. Horning, 654 A.2d 1183, 1187 (Pa.

---

[2] The relevant deed restrictions at issue are as follows:

(a) The Property shall not be used for any of the following either alone or in any combination: bowling alley; fast food type or take-out restaurant, including, but not limited to, restaurant where patrons order food from a service counter only, and/or restaurant where patrons are served in their automobiles: restaurant in which food is only served with self-service buffet; dollar type store and similar stores selling all merchandise at a uniform price; public medical center or clinic, or public health facility; public morgue and/or medical examiner's office; elementary or high school; regularly scheduled casino bus service; taxidermist; hand laundry,- laundry pick up and/or dry cleaning pick-up agency, water booster or sewer substations, railroad passenger stations, electric transforming or gas regulating substations; laundromat; automobile sales; automobile repair shop; installation of automobile, boat, motorcycle or truck parts; bath house or indoor or outdoor swimming pool as a main use; billiards or pool; bottling and/or distribution of liquids for human consumption; central heating plant; garages and parking as a main use; penal and/or correctional institution; sales of live fish, live poultry or live animals for human consumption; selfservice dry cleaning establishment; trolley and cab stations, bus terminals, car and bus barns; This restriction shall not prevent the Property from being used as an indoor farmer's market, cafe, or coffee bar which has outdoor seating.

* * * *

(c) Any restaurant use at the Property must operate with dine-in table service with waitstaff.

(d) Any residential use at the Property shall be for owner occupied use only.

See Defendant's Memorandum at Ex. L, at 1, 2.

Super. Ct. 1995) (citing Gey v. Beck, 568 A.2d 672, 675 (Pa. Super. Ct. 1990)).  When interpreting a contract, a court should "ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement."  County of Delaware v. J.P. Mascaro & Sons, Inc., 830 A.2d 587, 591 (Pa. Super. Ct. 2003) (citing Liddle v. Scholze, 768 A.2d 1183, 1185 (Pa. Super. Ct. 2001)).  Where the agreement is reduced to writing, the writing shall be "the sole evidence of [the parties'] agreement, and parol evidence may not be admitted to vary the terms of the contract in the absence of fraud, accident or mistake."  Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 994 (3d Cir. 1987).  The parol evidence rule precludes evidence of negotiations prior to the execution of the written document to show an intent that varies from the written document.  See McGuire v. Scheider, Inc., 534 A.2d 115, 117-18 (Pa. Super. Ct. 1987); Wilmington Trust Co. v. County of Allegheny, No. 05-1737, 2009 WL 904698, at *13-14 (W.D. Pa. Mar. 31, 2009).

    Because parole evidence is not permitted where the parties have executed an agreement, I will not consider evidence concerning events or discussions prior to the execution of the contract.[3]

---

[3] The Civic Associations contend the deed restriction prohibiting a high school was added because the civic leaders believed the community would have too many schools.  They allege their "major concern was a school would increase congestion, noise, vandalism, littering, disrespect to the residents and other 'quality of life' crimes from elementary and high school age children."  See Plaintiff's Reply at 7.  The Civic Association alleges this is "surrounding circumstances" not prior "course of dealings."  Id.  However, even if this was the intent of the Civic Associations, they presented no evidence this was the intent of the Defense Realty.  Moreover, even considering the Civic Associations' intent, that intent does not mean Job Corps is a high school.  As discussed below, Job Corps does not meet the definition of a high school.  See infra Part II.B.1

1.      Job Corps is not a High School

The deed restriction prohibits use of the property as an elementary or high school. It does not prohibit a college or career training center, and does not prohibit use for educational purposes, teaching, lecturing, or training.

The Pennsylvania legislature, through the Pennsylvania School Code, establishes and regulates elementary and secondary education in Pennsylvania.  See 24 P.S. 1-101, et seq.; see also Combs v. Homer-Center School District, 468 F.Supp. 2d 738, 743 (W.D.Pa. 2006); Pennsylvania Federation of Teachers v. Bd. of Ed. of the School District of Philadelphia, 414 A.2d 424, 426 (Pa. Cmwlth. 1980).   Local school districts are agents of the Commonwealth to which the state has delegated the responsibility to provide public education.  Pennsylvania Federation of Teachers, 486 A.2d at 753.

The Pennsylvania School Code provides:

> High schools shall be designated either as junior high schools or senior high schools by the Department of Public Instruction when they conform to regulations promulgated by the Department of Public Instruction in accordance with standards approved by the State Board of Education.

24 P.S. § 16-1601.  In addition, the Pennsylvania School Code regulates the education provided by high schools, the curriculum required for graduation, and the professionals permitted to educate at a high school.

The Civic Associations contend Job Corps is a high school because Job Corps' age range, young adults ages 16 to 24, overlaps with the high school student age range.

9

However, many Job Corps enrollees are too old for high school.[4]  In addition, the Pennsylvania School Code prescribes courses of study for high school students and authorizes the board of school directors in each school district to grant high school diplomas to students who satisfactorily complete a four year high school program.  24 P.S. § 16-1613.  This program includes four years of English, three years of mathematics, three years of science, three years of social studies, and two years of arts and humanities.  Id.  Job Corps does not provide the required four years of English, three years of mathematics, three years of science, three years of social studies, and two years of arts and humanities.  In addition, no one at Job Corps is authorized to grant diplomas.  The Pennsylvania Department of Education does not recognize Job Corps as a high school and, even though some of the enrollees are high school age, Job Corps does not meet the requirements of a high school.

The Civic Associations also maintain the term "high school" includes facilities such as Job Corps because some attendees are attempting to get their GED, and Job Corps provides assistance and classes in this pursuit.[5]  See Plaintiffs' March 31, 2009

---

[4] The Civic Associations cite a United States Census Bureau survey of school enrollment which reported 242,000 students from age 20 to 24 were enrolled in school in grades 9 through 12.  See Plaintiffs' March 17, 2009 Memorandum at 57 n.3.  Regardless, these students apparently were enrolled in high schools as defined above, with a high school curriculum covering all courses required for grades 9 through 12.

[5] The Civic Associations maintain the Agreement does not incorporate regulations, and, therefore, the common usage of the term "high school" should apply.  Even if I did not consider the regulations, the use still would not be considered a "high school."  The Civic Associations cite Webster's Third New Int'l Dictionary 1069 (1993), which defined "high school" as a "secondary school providing academic education or vocational training, and includes schools specializing in adult education that is professional, technical or liberal" and notes the term has been interpreted to include schools which prepare for the GED test.  See Hahn, 754 NE.2d at 463

Memorandum at 25-26. Although some enrollees take GED courses at the facility, and use the facility's computers to work on GED materials, Job Corps does not provide all curriculum courses required of a high school. In addition, the cases relied on by the Civic Associations to prove institutions providing GED classes are high schools are not relevant. The cases address when, for the purpose of terminating child support, a high school graduation occurs. See Marriage of Mary K. Hahn, 754 N.E.2d 461, 463 (App. Ct. Ill. 2001) (where contract terminated child support when the child graduated from high school, and a child received GED when he was eighteen, the court found "graduating from high school" included attaining a GED); Park v. Park, 634 So.2d 83, 86 (La. App. 1994) (child support obligation continued where major child under 19 years of age was attending a full-time vocational school to attain his high school equivalency diploma); In re Marriage of Copeland, 850 S.W. 2d 422 (Mo. App. 1993) (interpreting statute which continued child support obligations if child enrolls in higher education before the October following the graduation from secondary school, and determining under the statute attaining a GED was equivalent to graduating from a secondary school); L.D. v. K.D., 716 A.2d 569 (N.J. Super. Ct. 1998) (child support obligation continued for an

---

(citing Park, 634 So. 2d at 86).
       In the United States, however, the common usage of "high school" does not include schools "specializing in adult education that is professional, technical or liberal." Rather, Merriam-Webster's Collegiate Dictionary, defines "high school" as "a school esp[ecially] in the [United States usually] including grades [nine through twelve] or [ten through twelve]." Merriam-Webster's Collegiate Dictionary 587 (11th ed. 2005); accord Dictionary.com, High School, available at http://dictionary.reference.com/browse/high+school?
from Ask=true&o=100074 (last visited Sept. 25, 2009).

unemancipated nineteen-year old who failed senior year of high school and was in a residency drug rehabilitation center earning a GED).  They do not discuss whether the institutions attended are considered "high schools."

Approximately one-half of the Job Corps trainees received high school diplomas or GED certificates prior to enrolling at Jobs Corps.  Once a person receives a high school diploma or GED, he or she cannot return to high school.  See 22 Pa. Code § 11.27.  The Civic Associations maintain the enrollees who had obtained their diploma or GED prior to enrolling with Job Corps did not have a high school level education.  Therefore, they continued to receive courses in reading, English, math, and science required of those seeking to obtain a GED.  See Plaintiff's March 17, 2009 Memorandum at 58.  Jobs Corps, however, is not a high school merely because it offers some high school level courses.

The Civic Associations argue, because the School Code defines "vocational education" as "less than college grade," a school providing vocational education is a high school.  Id. at 59. The vocational schools referenced in the School Code, however, are those established and maintained by school districts.[6]  See 24 P.S. §§ 18-1806, 18-1807.  Job Corps is a component of the United States Department of Labor, was not established

---

[6] Plaintiffs cite an expert Dr. Matticoli, who compared Job Corps to the curriculum and learning environment of a Comprehensive/Vocational Technical High School and determined Job Corps was a high school because it was designed to achieve the same measures and impart the same level of academic and vocational/technical skills as those promoted in state vocational and technical schools.  As discussed above, Job Corps is not a high school merely because it offers some of the same courses offered in high school.  In addition, Dr. Matticoli's opinion does not address Job Corps failure to qualify as a high school under the Pennsylvania School Code.

by the Philadelphia School District, and is neither affiliated with, run by, nor financed by the Philadelphia School District or the Pennsylvania Department of Education.[7]

Contrary to the Civic Associations contentions, for the same reasons it is not a high school, Job Corps is not the equivalent of a high school. A use will not be found to violate a restriction unless it is "in plain disregard of its express purpose." Jones v. Park Lane for Convalescents, 120 A.2d 535, 537 (Pa. 1956). The Civic Associations could have sought to prohibit the property's use as a training or career training facility, a vocational educational facility, or other similar uses. The restriction, however, prohibits only use as an "elementary or high school." Because Job Corps' use is not "in plain disregard of [the restriction's] express purpose," the use does not violate the deed restriction.

Interpreting the intent of the parties "as reasonably manifested by the language of their written agreement," J.P. Mascaro & Sons, Inc., 830 A.2d at 591 (citing Liddle, 768 A.2d at 1185), I find Job Corps is not a "high school" prohibited by the deed restriction.

2.   Job Corps is not a Restaurant

Pursuant to the deed restrictions, restaurants at the property are limited to restaurants with "dine-in table service" and "wait-staff." See Defendant's Memorandum at Ex. L, at 2. The restrictions prohibit fast food and take-out restaurants, counter service restaurants, buffet restaurants, and drive-in restaurants. Id., at 1. The deed restrictions do

---

[7] For certain purposes, such as tort liability, Job Corps enrollees are considered federal employees. See 29 U.S.C. § 2897(a)(4).

not prohibit preparing, serving, or eating food.  The Civic Associations maintain Job Corps' cafeteria and vending area is a restaurant prohibited by the contract.  The Civic Associations maintain a restaurant need not be open to the public, and this cafeteria would qualify as an "eating house," which is a "restaurant in common parlance."  See Plaintiff's Memorandum at 62

Job Corps provides a course of study for institutional nutritionists.  See Defendants' Memorandum at Ex. M, at ¶ 22.  At the facility's institutional kitchen, enrollees are trained in nutrition, meal planning, and food preparation for health care institutions.  The food prepared by the enrollees is provided to enrollees free of charge.  Faculty members pay a nominal fee of $2.00 to partake in the lunch.  The room is not open to the public.  Only enrollees and faculty are permitted to eat there.

The Philadelphia zoning ordinance defines "restaurant" as: "A use engaged in the preparation and retail sale of food and beverages, including the sale of alcoholic beverages, on non-disposable ware for consumption by patrons on premises, with a minimum of thirty (30) seats, and which does not provide live entertainment." Title 14, Phila. Code, §14-102(d)(114).  Webster's II New Riverside University Dictionary (Houghton Mifflin 1988), at 1002, defines a restaurant as "[a] place for serving meals to the public."  MSN Encarta's dictionary defines a restaurant as "a place where meals and drinks are sold and served to customers."  Http://encarta.msn.com/dictionary_1861701471/restaurant.html (last visited September 26, 2009).

Job Corps does not provide retail sales of food or beverages, meals are not served to the public, and meals are not sold to customers.[8]  Although faculty are required to pay $2.00 to participate in the lunch, the lunch room is not open to the public.  Therefore, Job Corps is not a restaurant restricted pursuant to the deed restrictions.

    C.    <u>Job Corps does not include residences</u>

The Civic Associations maintain the defendants also violated the deed restriction prohibiting use of the premises in question for residences other than single family residences.  The Civic Associations, however, do not argue this restriction in their Memorandum.  In addition, Job Corps does not include dormitories or any other type of residences.  Defendant's Memorandum at Ex. M.  Accordingly, Job Corps does not contain a prohibited residential use.

**IV.**    **CONCLUSION**

Viewing the facts in the light most favorable to the Civic Associations, and drawing all reasonable inferences in the Civic Associations' favor, I find, as a matter of law, the Civic Associations' evidence is insufficient to establish Defendants violated the deed restrictions, and no fair-minded jury could return a verdict in their favor.  Accordingly, Defendants' Motions for Summary Judgment are granted.

An appropriate order is attached.

---

[8] The Civic Associations allege the taxpayers pay for the meal.  However, even if this is true, a restaurant is a location where people enter expecting to pay for their meal.